09/28/2018  3:48 PM                                          Resident Transaction Report                                              Page: 2
                                                               TOWNHOME OF THE FIELDS
                                                             Dates 01/01/2017 to 10/01/2018

TH-0566  TH of the Fields
Naperville IL  60540

| Unit | STAT# | Resident | Type | Date | CC | Description | Check | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 1120 | 02 | Ronald Witkowski | App# | 72304 | | | Beg Bal | | 0.00 |
| | | 1120 Tennyson Ln | Chg | 09/28/2018 | AS | 1/2018 ASSESSMENT | | 275.00 | 275.00 |
| | | Naperville IL 60540 | Chg | 09/28/2018 | AS | 2/2018 ASSESSMENT | | 275.00 | 550.00 |
| | | | Chg | 09/28/2018 | AS | 3/2018 ASSESSMENT | | 275.00 | 825.00 |
| | | 1120 TENNYSON LN | Chg | 09/28/2018 | AS | 4/2018 ASSESSMENT | | 275.00 | 1,100.00 |
| | | Naperville IL 60540 | Chg | 09/28/2018 | AS | 5/2018 ASSESSMENT | | 275.00 | 1,375.00 |
| | | | Chg | 09/28/2018 | AS | 6/2018 ASSESSMENT | | 275.00 | 1,650.00 |
| | | | Chg | 09/28/2018 | AS | 7/2018 ASSESSMENT | | 275.00 | 1,925.00 |
| | | | Chg | 09/28/2018 | AS | 8/2018 ASSESSMENT | | 275.00 | 2,200.00 |
| | | | Chg | 09/28/2018 | AS | 9/2018 ASSESSMENT | | 275.00 | 2,475.00 |
| | | | Chg | 09/28/2018 | AS | 5/2017-12/2017 ASSMT | | 2,000.00 | 4,475.00 |
| | | | Chg | 09/28/2018 | LT | 5/2017-12/2017 LATES | | 160.00 | 4,635.00 |
| | | | Chg | 09/28/2018 | LT | 1/2018-9/2018 LATES | | 100.00 | 4,735.00 |
| | | | Chg | 09/28/2018 | LT | 2018 LATE FEES | | 60.00 | 4,795.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 197610 | -270.00 | 4,525.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 609857 | -270.00 | 4,255.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 975808 | -270.00 | 3,985.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 067236 | -270.00 | 3,715.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 509085 | -270.00 | 3,445.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 15485738 | -270.00 | 3,175.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 16756216 | -540.00 | 2,635.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 17946505 | -300.00 | 2,335.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 18299027 | -290.00 | 2,045.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 19159705 | -295.00 | 1,750.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 20274682 | -295.00 | 1,455.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 21014778 | -275.00 | 1,180.00 |
| | | | Pay | 09/28/2018 | | FROM RESIDENT #01 | 23822879 | -295.00 | 885.00 |
| | | | Chg | 10/01/2018 | AS | ASSESSMENT | | 275.00 | 1,160.00 |
| | | | | | | | End Bal | | 1,160.00 |

*10-2-18  BK Legal fee           781.00   1,941.00* (handwritten)

4/5/88

# DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR TOWNHOMES OF THE FIELDS

THIS DECLARATION made this 7th day of April, 1988 by WISEMAN-HUGHES ENTERPRISES, INC., an Illinois corporation (hereinafter referred to as "DECLARANT")

**W I T N E S S E T H:**

WHEREAS, DECLARANT holds legal title to certain real property in the City of Naperville, County of DuPage, State of Illinois, which is legally described in Exhibit A attached hereto. (Sometimes hereinafter referred to as the "Property"); and

WHEREAS, DECLARANT is the developer of the Property and intends to subdivide the Property to provide for a planned unit development consisting of lots for townhomes and Common Area; and

WHEREAS, DECLARANT intends to make conveyances of the Common Area to the Townhomes of the Fields Owners' Association; and

WHEREAS, the DECLARANT desires to create on the Property a community consisting of townhomes together with easements, rights to the Common Area, including therein roads, driveways, walks, paths, open spaces and other Common Facilities; and

WHEREAS, DECLARANT intends to create the TOWNHOMES OF THE FIELDS OWNERS' ASSOCIATION under the laws of the State of Illinois as a not-for-profit corporation to promote and enhance the value and amenities in said community, maintain the exteriors of the townhouses located thereon; maintain and administer all Common Area, enforce the covenants, conditions and restrictions and reservations and collect and disburse the assessments and charges herein created;

NOW, THEREFORE, DECLARANT hereby declares that the real Property hereinabove set forth shall be held, occupied, sold and conveyed subject to the covenants, conditions, restrictions, reservations, easements, charges and liens created herein, which are for the purpose of promoting and enhancing the value, desirability and attractiveness of the Property. These easements, restrictions, covenants and conditions shall be considered as covenants running with the Property and shall be binding on all parties acquiring any interest in and to the aforesaid Property or any part thereof, and shall inure to the benefit of each Owner thereof.

## ARTICLE I
## DEFINITIONS

The following words and terms, when used in this Declaration, will be defined as follows:

1.01 ASSOCIATION: Association shall mean and refer to the TOWNHOMES OF THE FIELDS OWNERS' ASSOCIATION, an Illinois Not-for-Profit Corporation, its successors and assigns.

1.02 PROPERTY: Property shall mean and refer to the real property described on Exhibit A, which is subject to the provisions of this Declaration and such additions thereto as may hereafter be brought within the jurisdiction of the Association as provided herein.

A delineation of the property described in this instrument appears in PLAT BOOK NO. 136 PAGE 26

07-26-206-025
07-24-112-001

located thereon. Each such Owner shall have the exclusive use for driveway purpose of such portion of the Common Area improved with a driveway, subject only to the easement, if any, for sidewalks constructed for pedestrian traffic; public utility easements, if any; and maintenance by the Association. The use of such driveway by any other person may be enjoined by the Association or the Owner entitled to said exclusive use. The right to the exclusive use of such driveway shall pass with the title to each Living Unit.

5.04 UTILITY AND ACCESS EASEMENTS: Each Owner of a Lot and the DECLARANT shall have a nonexclusive easement for vehicular and pedestrian access over and across roadways and walkways from time to time located on the Common Area, including without limitation, those roadways and walkways which provide access to public ways. The Illinois Bell Telephone Company, Commonwealth Edison Company, Northern Illinois Gas Company, City of Naperville and its cable television franchise, Naperville Electric and all other public and private utilities serving the Property are hereby granted the right to lay, construct, renew, operate, and maintain conduits, cables, pipes, wires, transformers, switching apparatus and other equipment, into and through the Common Area for the purpose of providing utility services to the Property. The City of Naperville and any municipality or other governmental authority which has jurisdiction over the Property, or which undertakes to provide services to the Property, are hereby granted access easements for ingress and egress to, over and across the Common Area for the purpose of providing any such services. A two-thirds (2/3) majority of the Owners, at a meeting of Owners duly called for such purpose, may elect to dedicate a portion of the Common Area to a public body for use as, or in connection with, a street or a utility. Prior to conveyance of the Common Area to the Association, the DECLARANT shall have the right to grant easements for laying of television cable, according to the terms and conditions of the local ordinance providing for cable television in the municipality. After conveyance of the Common Area to the Association, the Board of Directors may authorize the granting of an easement for the laying of television cable, according to the terms and conditions of the local ordinance providing for cable television in the municipality.

5.05 DELEGATION OF USE: Any Member may delegate, in accordance with the By-Laws, his right of enjoyment to the Common Area and Common Facilities, to the members of his family, his tenants or contract purchasers or other occupants residing in the Living Unit.

5.06 DECLARANT'S RIGHTS: DECLARANT'S agents, members, guests and invitees shall have the easements of enjoyment described in 5.02 of this Article V until the DECLARANT'S rights under Article IV are fully terminated, at which point DECLARANT'S rights, if it is still an Owner, shall be the same as any other Owner.

## ARTICLE VI
## MAINTENANCE ASSESSMENTS

6.01 COVENANT FOR MAINTENANCE ASSESSMENTS: The DECLARANT, with respect to each Assessable Lot owned within the Property, and each Owner of an Assessable Lot by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or conveyance, is deemed to covenant and agree

5

to pay to the Association, (a) regular assessments or charges, and (b) special assessments for capital improvements and unforeseen expenses. All such assessments are to be established and collected as hereinafter provided by this Declaration, together with the Articles of Incorporation and By-Laws of the Association.

6.02 PURPOSE AND USE OF ASSESSMENTS: All assessments levied by the Association shall be for the purpose of insuring the high standards of maintenance and operation of the Property reserved or conveyed by the DECLARANT for the common use of all residents and Owners, the exterior of the respective Living Units, as well as other Common Facilities which now exist or may be constructed, and in general to promote the desired character of the Property. Such purposes and uses of assessments shall include, but are not limited to, the cost to the Association of all taxes, insurance, repair, replacement and maintenance of the Common Area, any storm sewer facilities originating on the Property, Common Facilities and the exterior of the Living Units as well as the mowing of grass, caring of grounds, landscaping and purchase of equipment and other charges required by this Declaration of Covenants, Conditions and Restrictions or that the Board of Directors of the Association shall determine to be necessary or desirable to meet the primary purpose of the Association.

6.03 ASSESSMENT PROCEDURE--REGULAR ASSESSMENTS: Until January 1, 1989, the regular assessments shall not exceed $70.00 per month per Assessable Lot. From and after January 1, 1989 the regular assessments shall be determined by the affirmative vote of two-thirds (2/3) of the Board of Directors of the Association, as provided in this Declaration and the By-Laws of the Association.

On or before December 1 of each year, commencing December 1, 1988 and pursuant to the By-Laws of the Association, the Board of Directors shall hold a meeting or meetings (a) to estimate all expenses provided for in 6.02 of this Article VI; (b) to fix the amount assessed against the individual Assessable Lots for the forthcoming year; and (c) to establish the date or dates on which such assessments or installments thereof shall be due the Association and in lieu thereof, the amount of the prior year's annual assessment shall be the fixed amount. Should the Board of Directors fail to establish payment dates, all regular assessments shall be due in twelve (12) equal installments on the first day of each month of the year for which they are assessed. The annual assessment on Assessable Lots added through annexation shall Commence on the first day of the month following annexation of such property.

Any regular assessments may include a reasonable reserve fund which may be allocated to the costs of maintaining and improving the Common Area, Common Facilities, exteriors of Living Units and other purposes contemplated in 6.02 of this Article VI, and to capital improvements. Any allocation of reserve funds shall be made upon the affirmative vote of two-thirds (2/3) of the Board of Directors of the Association, which vote shall be taken at a meeting called for that purpose as provided in the By-Laws of the Association.

The Board of Directors shall prepare an itemized list of all estimated expenditures, and give written notice of the assessment to every Owner subject thereto.

6.04 ASSESSMENT PROCEDURE--SPECIAL ASSESSMENTS: Special assessments may be levied by the Association to defray the expense, in whole or in part, of any capital improvement or

unforeseen expenses. Such capital improvements shall include the construction or reconstruction, or unexpected repair or replacement of any capital improvements upon the Common Area, Common Facilities, or the exterior of any Living Unit or Units. Unforeseen expenses shall be deemed to be those expenses not provided for in the itemized list of estimated expenditures provided for in Section 3 of this Article VI.

Whenever the Board of Directors shall determine that there exists a need for levying a special assessment as herein provided, the Board of Directors shall adopt a resolution setting forth the need, amount, period of payment and due date or dates for the proposed special assessment. All special assessments must be approved by a two-thirds (2/3) vote of the entire Membership of each class. Said vote shall be taken at a meeting called by the Board for that purpose.

6.05 ALLOCATION OF ASSESSMENTS: Both annual and special assessments must be fixed at a uniform rate for all Assessable Lots, except as may be otherwise provided for in this Declaration. Any assessment and any installment thereof provided for herein shall commence on the Assessable Lot on the due date for such assessment in the month following the conveyance, transfer or lease of such Lot by the DECLARANT. The initial assessment shall be adjusted according to the number of months remaining in any calendar year. All assessments, both regular and special, shall be due on January 1st of the following year payable in twelve monthly installments commencing on the first day of January of that year and on the first day of every month thereafter.

6.06 NON-PAYMENT OF ASSESSMENTS: Any assessments, regular or special, which are not paid on the due date shall be delinquent. Such delinquency shall be a continuing lien and an equitable charge running with the land touching and concerning said Lot so assessed, held by the then Owner or Owners, his heirs, devisees, personal representatives, assigns, successors and grantees.

Should title to any Assessable Lot be held by more than one Owner, all Owners shall be jointly and severally liable. The lien shall attach to all rents due from parties in possession on any Lot on which a delinquent assessment exists, provided that it shall be subordinate to an assignment of rents held by a mortgagee when delivered in connection with a first mortgage loan to purchase the property.

If an assessment or other charge or payment is not paid within thirty (30) days after the due date, it shall bear interest from the due date at the contract rate of interest then permitted in Illinois but not to exceed eighteen percent (18%) per annum, and the Board (i) may bring an action against the Owner personally obligated to pay the same, together with interest, costs and reasonable attorneys' fees of any such action, which shall be added to the amount of such assessment or other charge or payment and shall be included in any judgment rendered in such action, (ii) accelerate payment of the portion of the Annual Assessment payable by such Owner for the remainder of the fiscal year, and (iii) may enforce and foreclose any lien which it has or which may exist for its benefit, (iv) maintain for the benefit of all other Owners an action for possession in the manner prescribed by "An Act in Regard to Forcible Entry and Detainer". In addition, the Board may add a reasonable late fee to any installment of an assessment which is not paid within thirty (30) days of its due date. No Owner may waive or otherwise escape liability for the assessments or other charges or payment provided for herein by nonuse, abandonment or transfer

of his Lot.

The enforcement of liens or charges shall be limited to a period of five (5) years.

The venue for all actions at law provided for in this Article VI shall be in DuPage County, Illinois. The persons in possession of any Living Unit shall be authorized to accept summons on behalf of the Owner or Owners of such Living Unit.

No Owner may waive or otherwise escape liability for the assessments provided for herein by the non-use of the Common Area or abandonment of his Living Unit and Assessable Lot.

**6.07 SUBORDINATION OF LIEN:** The lien of the assessments provided for herein shall be subordinate to the lien of the first mortgage or first trust deed placed upon the Lot and Living Unit for the purpose of purchasing same. Such automatic subordination shall apply only to the assessments which arise subsequent to the lien of the first mortgage or first trust deed. The sale or transfer of any Lot or Living Unit pursuant to a decree of foreclosure under such first mortgage or first trust deed, or any proceeding or conveyance in lieu thereof, shall extinguish the lien of such assessments which have become due and payable prior to such sale or transfer. Such sale or transfer shall not relieve the Lot or Living Unit from liability for any assessments or installments thereafter becoming due.

**6.08 EXEMPT PROPERTY:** The following properties subject to this Declaration shall be exempt from the assessments created herein:

  a. All properties dedicated to any unit of government, local public authority and granted to or used by a utility company, regardless of the property so dedicated.

  b. All Living units owned by the DECLARANT which are used at any time by DECLARANT as a model home or office.

  c. All Lots, regardless of whether such Lots are improved with Living Units, which have not been conveyed, transferred or leased by the DECLARANT.

  d. Common Area as defined in the plat of record.

  e. Any Living Unit in the process of construction, title to which is retained by the DECLARANT.

The DECLARANT shall be responsible for the maintenance of all Lots and Living Units constructed on the Property for which certificates of occupancy have been issued but which have not been sold, conveyed, or leased.

**6.09 ASSENT TO MEMBERSHIP IN FIELD'S COMMUNITY ASSOCIATION:** The Declarant, with respect to each Assessable Lot owned within the Property and each Owner of an Assessable Lot be acceptance of a deed therefore, whether or not it shall be so expressed in any such deed or other conveyance, agrees to be a member of the Field's Community Association and further assents to and shall be bound by all terms and provisions of the Field's Community Association's Charter, Bylaws and such rules and regulations as the Field's Community Association may from time to time promulgate; and further assents to this Association's collection

8

of assessments for the Fields Community Association by agreement between the Associations.

**6.10 INITIAL CAPITAL CONTRIBUTION:** Upon the closing of the sale of each Assessable Lot by the Declarant to a purchaser for value, the purchasing Owner shall make a non-refundable working capital contribution to the Association in an amount equal to two (2) month's Annual Assessment at the rate in effect with respect to the Assessable Lot as of the closing, which amount shall be held and used by the Association for its working capital needs.

## ARTICLE VII
## PARTY WALLS

Each Lot Owner shall be subject to the following limitations and restrictions with respect to party walls constructed within the subdivision, as follows:

**7.01 GENERAL RULES OF LAW TO APPLY:** Every wall which is built as a part of the original construction of the townhouses and placed on the dividing line between separate Lots therein shall constitute a party wall, and to the extent not inconsistent with this Article VII, the general rules of law regarding party walls shall apply thereto.

**7.02 WILLFUL, NEGLIGENT OR ACCIDENTAL DAMAGE:** Should any party wall be damaged or destroyed through the act or acts of any owner of a Living Unit contiguous thereto, his tenants, agents, servants, guests or members of his family, irrespective of whether such act is willful, negligent or accidental, such Owner shall forthwith proceed to rebuild or repair said party wall to as good a condition as formerly existed without cost to the other adjoining Owner.

**7.03 REPAIR, MAINTENANCE AND DAMAGE BY FIRE OR OTHER CASUALTY:** Should any party wall be destroyed or damaged by fire or other casualty or be in need of reasonable repair or maintenance, such wall shall be rebuilt, repaired or maintained by the Owners of both Living Units contiguous thereto to the end that such wall shall be restored to as good a condition as existed prior to such fire, casualty or need for repair or maintenance. It is expressly provided that the costs of any such repair or maintenance to a party wall shall be borne by the Owners of the Living Units contiguous thereto in proportion to the use made of such party wall and as promptly as is reasonably possible.

**7.04 ALTERATION:** Any Owner of a Lot who proposes to modify, rebuild, repair or make additions to his own Living Unit or any structure upon his Lot in any manner which requires the extensive alteration or modification of any party wall shall first obtain the written consent of the adjacent Owner in addition to meeting the other requirements of these covenants.

**7.05 CONTRIBUTION:** Should any Owner incur expenses in connection with the reconstruction, repair or maintenance provided for in this Article VII, which expenses should, by the terms of this Article or any general rule of law pertaining to party walls, be borne by the Owner of the other Living Unit contiguous to such wall, in whole or in part, the owner incurring such expenses shall have a right of contribution from such other Owner, which right shall be appurtenant to the land and passed to such Owner's successor in title.

**7.06 ARBITRATION:** In the event a disagreement should arise with respect to the repair, reconstruction or maintenance of a party wall, the adjoining Owners shall select an arbitrator, whose decision shall be binding on the Owners.

9